**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 2:16-CV-14508-ROSENBERG/LYNCH**

JAMES ALDERMAN, on behalf of himself
and all others similarly situated,

       Plaintiff,

  v.

GC SERVICES LIMITED PARTNERSHIP,

       Defendant.

**DEFENDANT GC SERVICES LIMITED PARTNERSHIP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

Defendant GC Services Limited Partnership moves the Court to dismiss this action under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction as to all of Plaintiff's claims because Plaintiff lacks standing to bring this suit.

In the alternative, Defendant moves the Court to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

**BACKGROUND FACTS**

Plaintiff brings this action on behalf of himself and proposes to do so for others "similarly situated" against Defendant under the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff alleges a certain debt collection letter sent by Defendant to Plaintiff and other consumers violated the FDCPA. *See* 15 U.S.C. § 1692 *et seq.*

After having been retained by Synchrony Bank to recover a monetary debt owed by Plaintiff, Defendant, on or about March 30, 2016, mailed a letter to Plaintiff informing him of the

1

debt. A copy of the letter at issue (the "Letter") is attached to Plaintiff's Complaint as Doc. 1-3. The Letter states in pertinent part:

> As of the date of this letter, our records show you owe a balance of $4,884.00 to Synchrony Bank. If you dispute this balance or the validity of this debt, please let us know in writing. If you do not dispute this debt in writing within 30 days after you receive this letter, we will assume this debt is valid.

Complaint, at Doc. 1-3.

Plaintiff contends the Letter violated the FDCPA because it did not contain an informational disclosure contained in 15 U.S.C. § 1692g(a)(3). Complaint, at ¶¶ 14, 23-27. In Count I of the Complaint, Plaintiff argues, "Defendant's Demand Letter states the consumer must dispute the debt in writing despite the clear wording of *15 U.S.C. §1692g(a)(3)* which contains no writing requirement in order for the consumer to dispute the debt." Complaint, at ¶ 27. (Emphasis in original).

In Count II, Plaintiff argues Defendant violated 15 U.S.C. §1692e because "Defendant's Demand Letter would be confusing and misleading to the least sophisticated consumer with regard to his/her legal rights as it states that the Plaintiff and the Class have to dispute the debt in writing despite the clear wording of *15 U.S.C. §1692g(a)(3)* which contains no writing requirement in order for the consumer to dispute the debt." Complaint, at ¶ 35. (Emphasis in original).

Plaintiff seeks class certification, statutory, but no actual, damages for himself and the putative class, costs, and attorney's fees. Complaint, at p. 8.

## ARGUMENT

### Plaintiff's Lack of Standing

The standing doctrine serves to ensure the authority of the federal courts extends only to "cases" and "controversies," as mandated by Article III of the United States Constitution. U.S. Const. art. III, § 2; *accord Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540, 1547 (2016). In practice, standing functions as a "threshold question" a litigant invoking federal jurisdiction must satisfy before the court may hear the case. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197 (1975). The "irreducible constitutional minimum of standing" is that a plaintiff show (1) an "injury-in-fact" that (2) is "fairly . . . trace[able] to the challenged action of the defendant" and (3) is "likely . . . [to] be redressed by a favorable decision" in court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992). The burden of these three elements together "ensure[s] that federal courts do not exceed their authority as it has been traditionally understood . . . [and] limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547.

As did the Supreme Court's recent opinion in *Spokeo*, this motion focuses on the first of standing's three elements: injury-in-fact. This burden requires a plaintiff show "an invasion of a legally protected interest" that is both "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). The Supreme Court has "emphasized repeatedly" that an injury "must be concrete in both a qualitative and temporal sense." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S. Ct. 1717 (1990). Such an injury must be "distinct and palpable, as opposed to merely [a]bstract." *Id.* (citations and internal quotation marks omitted). In other words, "the 'injury in fact' test requires

3

more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-35, 92 S. Ct. 1361 (1972).

In *Spokeo*, a class-action lawsuit brought under the Fair Credit Reporting Act, the Supreme Court discussed the principles of standing and the injury-in-fact requirement. 136 S. Ct. at 1546. Like the FDCPA, the Fair Credit Reporting Act imposes various procedural requirements on consumer reporting agencies in order to ensure credit reporting is fair and accurate. *See* 15 U.S.C. § 1681e. Spokeo, Inc. is a web-based company that compiles informational "profiles" of persons from various online databases and provides the profiles to users via its website. *Spokeo*, 136 S. Ct. at 1546. This information can include "the individual's address, phone number, marital status, approximate age, occupation, hobbies, finances, shopping habits, and musical preferences." *Id.* The plaintiff, a private consumer, learned Spokeo had provided incorrect information on the plaintiff to a Spokeo user. *Id.* The plaintiff sued Spokeo for violating the Fair Credit Reporting Act's procedural requirements. *Id.* at 1545-46. The district court found the plaintiff had not alleged an injury-in-fact and dismissed the complaint for lack of standing. *Id.* at 1546. The Court of Appeals for the Ninth Circuit reversed. *Id.* The Ninth Circuit held the plaintiff's injury "satisf[ied] the injury-in-fact requirement of Article III" because "Spokeo violated [the plaintiff's] statutory rights, not just the statutory rights of other people." *Id.* (*quoting* 742 F.3d 409, 413-14 (9th Cir. 2014)).

The Supreme Court granted certiorari and reversed the Ninth Circuit's finding of standing. *Id.* at 1550. It found the Ninth Circuit's injury-in-fact analysis focused exclusively on whether the plaintiff's injury was particularized. *Id.* The Supreme Court stated it has "made it clear time and time again" that plaintiffs must establish both a particularized *and* concrete injury to show injury-in-fact. *Id.* at 1548. The Supreme Court held that, "[b]ecause the Ninth Circuit

4

failed to fully appreciate the distinction between concreteness and particularization, its standing analysis was incomplete." *Id.* at 1550. The Court did not determine if the plaintiff ultimately had standing under the Fair Credit Reporting Act and instead remanded the case to the Ninth Circuit for further proceedings. *Id.*

The Supreme Court described the analysis for determining whether an alleged injury is concrete. "[A] concrete injury must be '*de facto*'; that is, it must actually exist." *Id.* at 1548.

Notably, and importantly here as it was in *Spokeo*, the ability of Congress to create cognizable injuries does not mean a plaintiff can "allege a bare procedural violation [of a federal statute], divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549. The mere fact that "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right" does not result in automatic standing. *Id.* Plaintiffs must still show a concrete injury when alleging a statutory violation. *Id.* There are some circumstances where the injury-in-fact requirement can be satisfied by a bare procedural violation of a statutory right, as long as that violation is still tied to real and concrete harm. *See id.* at 1549-50. In such cases, "a plaintiff . . . need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549.

Here, Plaintiff alleges the Letter he received from Defendant violated a certain disclosure requirement of the FDCPA. Complaint, at ¶ 14. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The statute accomplishes this purpose in part by providing consumers the right to dispute the validity of an alleged debt within thirty days after receiving notice of the debt from a

debt collector. *Id.* § 1692g(a)(3). Once a consumer exercises this right, the debt cannot be assumed to be valid by the debt collector. *Id.* The FDCPA requires debt collectors inform consumers of this right and others via written notification "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt." *Id.* § 1692g(a). Furthermore, "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt...." *Id.* § 1692g(b).

In Count I, Plaintiff contends Defendant violated this disclosure requirement. Complaint, at ¶ 27. Plaintiff argues Defendant failed to properly inform him of his rights under the FDCPA because the Letter "state[d] the consumer must dispute the debt in writing despite the clear wording of *15 U.S.C. §1692g(a)(3)* which contains no writing requirement in order for the consumer to dispute the debt." Complaint, at ¶ 27. (Emphasis in original). Plaintiff does not allege *any* injuries beyond this statutory violation.

In Count II, Plaintiff's contention, by which Plaintiff alleges Defendant violated 15 U.S.C. § 1692e, which prohibits the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt," is based solely and contingent upon Defendant's alleged violation of the FDCPA's disclosure requirement at 15 U.S.C. § 1692g(a)(3), upon which Plaintiff bases his first claim, discussed *supra*. Complaint, at ¶¶ 30-35.

A violation of the FDCPA alone, however, does not itself amount to an injury-in-fact. *Compare Spokeo*, 136 S. Ct. at 1549 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."). "[A] bare procedural violation [of a statute], divorced from any concrete

harm" cannot confer Article III standing. *Id.* For example, the *Spokeo* Court stated that even if a consumer reporting agency violated the Fair Credit Reporting Act by "fail[ing] to provide the required notice to a user of the agency's consumer information," no concrete harm would result if that information was in fact accurate. *Id.* at 1550. Similarly, the Court remarked "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* In other words, not all failures to give statutorily mandated notice or accurate information "cause harm or present any material risk of harm." *Id.*

In this case, both of Plaintiff's claims relate to Defendant hypothetically interfering with Plaintiff's ability to dispute his debt. In his first of two, total claims, Plaintiff argues the Letter he received from Defendant violated the FDCPA because the Letter "state[d] the consumer must dispute the debt in writing despite the clear wording of *15 U.S.C. §1692g(a)(3)* which contains no writing requirement in order for the consumer to dispute the debt." Complaint, at ¶ 27. (Emphasis added).

In his second claim, Plaintiff argues Defendant's Letter violated § 1692e of the FDCPA because, "Defendant's Demand Letter would be confusing and misleading to the least sophisticated consumer with regard to his/her legal rights as it states that the Plaintiff and the Class have to dispute the debt in writing despite the clear wording of *15 U.S.C. §1692g(a)(3)* which contains no writing requirement in order for the consumer to dispute the debt." Complaint, at ¶ 35. (Emphasis added).

But Plaintiff never even *suggested*, let alone aver, that he ever intended or attempted to dispute his debt in any way. Plaintiff does not allege the amount of the debt listed at the top of the Letter was incorrect. Plaintiff does not express any doubt as to the validity of the debt. In other words, Plaintiff does not argue he suffered any harm at all, let alone the concrete harm the

disclosure requirements within section 1692g of the FDCPA are designed to prevent. *See* S. Rep. No. 95-382, at 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1699 (stating the "[v]alidation of debts" provision in section 1692g of the FDCPA "will eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid"). The fact pattern of Plaintiff's Complaint mirrors the Supreme Court's illustration of a statutory violation that fails to amount to a concrete injury. *See Spokeo*, 136 S. Ct. at 1550 ("A violation of one of the [Fair Credit Reporting Act]'s procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate.").

Here, Plaintiff does not allege in his Complaint *any* injuries beyond statutory violations. Moreover, Plaintiff's alleged statutory violations did not create any risk of real harm because, as indicated above, Plaintiff did not intend and had no grounds to dispute or challenge the validity of his debt. If a consumer contends the alleged debt owed is incorrect, or merely wishes to verify the debt, then a deficient disclosure of his FDCPA rights could create a risk of real harm because a consumer could inadvertently forfeit his right to validate the debt. *Cf. Riess v. Messerli & Kramer, P.A.*, 2011 U.S. Dist. LEXIS 130621, 2011 WL 5506290, at *4 (N.D. Minn. Nov. 10, 2011) (finding a consumer intending to dispute his debt was misled by a letter demanding immediate payment before the thirty-day validation window, which "suggested that [the consumer] was out of time and no longer had the option to dispute his debt"). However, because Plaintiff never intended to dispute or verify his debt, Defendant's alleged failure to disclose Plaintiff's FDCPA rights in the Letter did not carry the risk of real harm. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (stating the Court has "repeatedly reiterated that

'threatened injury must be *certainly impending* to constitute injury in fact' and that 'allegations of *possible* future injury' are not sufficient") (quoting *Whitmore*, 495 U.S. at 158).

In *Provo v. Rady Children's Hosp.*, 2016 U.S. Dist. LEXIS 120174, 2016 WL 4625556, at *2 (S.D. Cal. Sept. 6, 2016), the Southern District of California analyzed the injury-in-fact element following *Spokeo*. In *Provo*, the court found the plaintiffs' allegation that the debt collector's letter violated the FDCPA was not a concrete injury when "nowhere in the [complaint did the plaintiffs] plead any harm or material risk of harm that they suffered as a consequence." Like the plaintiffs in *Provo*, Plaintiff's only allegations here are statutory procedural violations. Accordingly, the Court should find such claims are insufficient to establish concrete injury.

Violations of the FDCPA disclosure requirements in section 1692g may result in concrete injuries. However, Plaintiff alleges no such injury. Instead, his only alleged injury, which is the basis for each of his two claims, is that Defendant did not make the correct disclosure contained in 15 U.S.C. § 1692g(a)(3). Such a bare procedural violation alone does not constitute an intangible harm that satisfies the injury-in-fact requirement. Without further alleging a concrete and particularized injury as a result of the FDCPA violation, Plaintiff's claims are insufficient for Article III standing. Consequently, the Court should dismiss Plaintiff's Complaint in accordance with Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction because Plaintiff lacks standing to sue.

## PLAINTIFF DOES NOT HAVE STANDING BASED ON AN INTANGIBLE "INJURY"

The Court should reject any argument by Plaintiff that he has alleged an "informational injury" that is sufficiently concrete to meet the requirements of *Spokeo*. In *Spokeo*, the Court "implicitly recognized" that certain types of "informational" injuries are "sufficient to support Article III standing." *Spokeo*, 136 S. Ct. 1549-50. In particular, the Court stated that "the violation of a procedural right granted by statute can be sufficient in some circumstances

9

to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.* at 1549-50 (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20-25, 118 S. Ct. 1777 (1998); *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, 109 S. Ct. 2558 (1989). The Court described the holding in *Akins* as "confirming that a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III." *Id.* According to the Court, *Public Citizen* held that "two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act 'constitutes a sufficiently distinct injury to provide standing to sue.'" *Id.*

The case law is not consistent with respect to how broadly to read the language in *Spokeo* with respect to informational injury. The Eleventh Circuit read broadly this language in *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. July 6, 2016). In that case, the plaintiff received a letter from defendant, on behalf of a hospital, stating that she owed a debt to the hospital. 2016 U.S. App. LEXIS 12414, [WL] at *1. The letter did not include certain disclosures that are required under the FDCPA. *Id.* Although the plaintiff did not allege she had suffered actual damages as a result of the failure to include these disclosures, she did allege she "was very angry" and "cried a lot" when she received the letter. *Id.* The court addressed whether these allegations were sufficient to demonstrate a concrete injury under *Spokeo* and found that they were because "[t]he invasion of Church's right to receive the disclosures is not hypothetical or uncertain: Church did not receive information to which she alleges she was entitled." 2016 U.S. App. LEXIS 12414, [WL] at *3.

In reaching this conclusion, the *Church* court likened the facts of the case to those in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S. Ct. 1114 (1982). *Havens* was cited by

Justice Thomas in his concurrence in *Spokeo* to illustrate the point that "[a] plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right." *Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring). In *Havens*, the Court found that a black "tester" who was given false information about the availability of housing based on her race had standing to assert a claim under Section 804(d) of the Fair Housing Act, reasoning as follows:

> A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d).

*Havens*, 455 U.S. at 373-74. The *Church* court concluded that the failure to include the required disclosures in the letter that was sent to the plaintiff in that case was comparable: "Just as the tester-plaintiff had alleged injury to her statutorily-created right to truthful housing information, so too has Church alleged injury to her statutorily created right to information pursuant to the FDCPA." 2016 U.S. App. LEXIS 12414, 2016 WL 3611543, at *3.

A federal district court in New York rejected the reasoning of the Eleventh Circuit in *Church*, however, in *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285 PKC AKT, 2016 U.S. Dist. LEXIS 101201, 2016 WL 4099109 (E.D.N.Y. Aug. 2, 2016). In that case, the plaintiff asserted claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, based on allegations the defendant, a loan servicer, had not provided the plaintiff with information about the servicing of his loan that RESPA requires be disclosed in so-called "Hello/Goodbye" letters notifying a borrower of a change in the loan servicer. 2016 U.S. Dist. LEXIS 101201, [WL] at *6. The plaintiff conceded he had suffered no actual damages as a result

of the failure to send the letter with these disclosures. *Id.* The court addressed whether this violation was a "bare procedural violation" under *Spokeo* or instead, the sort of statutory violation that is sufficient to establish Article III standing on its own, examining the two cases cited in *Spokeo* as examples of the latter, *Akins* and *Public Citizen*.

In *Akins*, the Court held that a group of voters had standing to challenge a determination by the Federal Election Commission (FEC) that the American Israel Public Affairs Committee ("AIPAC") was not a "political committee" as defined by the Federal Election Campaign Act of 1971 ("FECA"), 86 Stat. 11, as amended, 2 U.S.C. § 431(4). 524 U.S. at 14. As a result of the FEC's determination, AIPAC was not required to make disclosures regarding its "membership, contributions, and expenditures that FECA would otherwise require." *Id.* at 13. The Court found that the plaintiffs had standing under Article III, reasoning as follows:

> The "injury in fact" that respondents have suffered consists of their inability to obtain information—lists of AIPAC donors (who are, according to AIPAC, its members), and campaign-related contributions and expenditures—that, on respondents' view of the law, the statute requires that AIPAC make public. There is no reason to doubt their claim that the information would help them (and others to whom they would communicate it) to evaluate candidates for public office, especially candidates who received assistance from AIPAC, and to evaluate the role that AIPAC's financial assistance might play in a specific election. Respondents' injury consequently seems concrete and particular. Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute. *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, 109 S.Ct. 2558, 2564, 105 L.Ed.2d 377 (1989) (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Id.* at 21.

In *Public Citizen*, the plaintiffs, Washington Legal Foundation and Public Citizen, challenged the United States Department of Justice's use of confidential reports prepared by the

American Bar Association's Standing Committee on Federal Judiciary ("ABA Committee") to evaluate nominees for judgeships. 491 U.S. at 443. The plaintiffs asserted that the ABA Committee was an "advisory committee" under the Federal Advisory Committee Act ("FACA") and therefore was required to make its minutes, records, and reports public. *Id.* at 447-48. The Court found that the plaintiffs had standing under Article III because they sought "access to the ABA Committee's meetings and records in order to monitor its workings and participate more effectively in the judicial selection process" and had been denied that information. *Id.* at 449. The Court held that "[a]s when an agency denies requests for information under the Freedom of Information Act, refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue." *Id.*

The court in *Dolan* found significant that "both *Akins* and *Public Citizen* involved statutory rights intended to protect and promote public interests that, by their nature, are intangible and diffuse, and would be rendered wholly unenforceable were intangible injury, or bare procedural violations, categorically insufficient to confer standing." 2016 U.S. Dist. LEXIS 101201, 2016 WL 4099109, at *4. The court found that another section of RESPA that was *not* asserted in *Dolan* - Section 2607, which prohibits "any fee, kickback, or thing of value" in exchange for a referral "incident to or a part of a real estate settlement service involving a federally related mortgage loan," was aimed at addressing a similar public interest and could give rise to standing based only on a statutory violation. 2016 U.S. Dist. LEXIS 101201, [WL] at *4-5. On the other hand, the court concluded, the provision that the plaintiff in *Dolan* alleged was violated, Section 2605, which required that certain information be disclosed to buyers when their loans changed servicers, did "not implicate the type of diffuse, intangible injury at issue in *Akins* and *Public Citizen*, but rather [sought] to redress actual damages caused by the failure of

one private party, *i.e.*, a loan servicer, to provide specific information to another private party,

i.e., a borrower." 2016 U.S. Dist. LEXIS 101201, [WL] at *5. Consequently, the court held, a

plaintiff alleging a violation of Section 2605 required more than a mere violation to establish

Article III standing. *Id.*

In a footnote, the *Dolan* court rejected the Eleventh Circuit's decision in *Church*, stating

as follows:

> The Court is aware of the Eleventh Circuit's recent decision in
> *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App.
> LEXIS 12414 (11th Cir. July 6, 2016), in which the Eleventh
> Circuit concluded that a plaintiff had standing to assert claims
> under the Fair Debt Collection Practices Act ("FDCPA") simply
> by alleging that she had not received all information to which she
> was entitled under the statute, even in the absence of any
> allegations of "tangible economic or physical harm." 2016 U.S.
> Dist. LEXIS 101201, [WL] at *10-11. The Eleventh Circuit
> reasoned that "the Supreme Court has made clear [that] an injury
> need not be tangible to be concrete," and that the injury of not
> receiving a disclosure to which someone is entitled was "one that
> Congress has elevated to the status of a legally cognizable injury
> through the FDCPA." 2016 U.S. Dist. LEXIS 101201, [WL] at 11
> & n.2 (holding that this was not a "procedural violation," but the
> violation of a "substantive right to receive certain disclosures").
> The Court is not bound by this decision, and respectfully disagrees
> with it, based on this Court's conclusion that the cases cited in
> *Spokeo* as examples of intangible harm sufficient to confer
> standing, *i.e., Akins* and *Public Citizen*, involved interests of much
> greater and broader significance to the public than those at issue in
> *Church* and, more relevantly, under Section 2605 of RESPA. In
> short, the Court rejects the view that *Spokeo* established the
> proposition that every statutory violation of an "informational"
> right "automatically" gives rise to standing. See *Spokeo*, 136 S. Ct.
> at 1549 (holding that plaintiff alleging FCRA violation "could not
> ... allege a bare procedural violation, divorced from any concrete
> harm, and satisfy the injury-in-fact requirement of Article III").

2016 U.S. Dist. LEXIS 101201, [WL] at *6 n. 7.

Furthermore, the *Dolan* court noted that *Church* appears to be inconsistent with *Spokeo* to

the extent the cases cited in *Spokeo* (*Akins* and *Public Citizen*) implicated interests of broad

significance to the public, whereas the alleged failure to disclose at issue in *Church* did not. Therefore, the Court should decline to adopt the Eleventh Circuit's broad reading of *Spokeo* and not follow *Church* here.

In this case, Plaintiff alleges Defendant violated the FDCPA's "validation of debts" provision. Complaint, at ¶ 14; 15 U.S.C. § 1692g(a)(3). The provision's purpose is to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4. To prevent this, the provision vests consumers with the right to dispute and verify any debt they are alleged to owe, and contains various procedures for ensuring that right, including disclosure requirements for debt collectors. *See* 15 U.S.C. § 1692g(a). A debt collector must provide a consumer, within five days after the initial communication between the consumer and the debt collector, a written notice containing:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id.* § 1692g(a). These requirements in section 1692g(a) are procedural rights designed to decrease the risk of the injury identified by Congress in the FDCPA—abusive debt collection practices in the form of "dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4. Although violating these procedural rights

may result in the harm identified by Congress, it does not result in such an injury on its own, unlike the procedural violations at issue in *Akins* and *Public Citizen*.

In sum, the Court should conclude that under *Spokeo* and the specific facts of this case, Plaintiff, who has failed to allege a concrete and particularized injury as a result of any alleged FDCPA violation, has therefore failed to establish he has met Article III's injury-in-fact requirement. Consequently, Plaintiff's Complaint should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction.

**Plaintiff's Failure to State a Claim**

In the alternative, should the Court find it has subject matter jurisdiction to adjudicate Plaintiff's claims, the Court should dismiss the entire Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim because even if the factual allegations contained in the Complaint are accepted as true, Plaintiff has not stated a claim to relief. A court has authority to dismiss a suit if the complaint does not contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (internal quotation marks omitted).

The issue of whether § 1692g(a)(3) of the FDCPA requires a debtor's dispute regarding the validity of a debt to be in writing has divided federal courts. While the Eleventh Circuit has not yet decided the question of whether § 1692g(a)(3) requires a debtor to dispute a debt in writing and those federal courts that have considered this issue have reached opposite conclusions, Defendant recognizes this Court's holding in *Baez v. Wagner & Hunt, P.A.*, 442 F. Supp. 2d 1273 (S.D. Fla. 2006) (Cohn, J.) in which the Court denied defendant's 12(b)(6) motion to dismiss concluding that § 1692g(a)(3) does not impose a writing requirement.

Defendant respectfully disagrees with the Court's reasoning in *Baez*, the reasoning of the other cases cited in *Baez* as support, and the Ninth Circuit Courts of Appeals. Instead, Defendant follows an interpretation of § 1692g(a)(3) which is consistent with the Third Circuit's case law; namely, *Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991) which views § 1692g(a)(3) as having an implied writing requirement.

The sole basis for Plaintiff's claims that Defendant violated the FDCPA is the factual allegation that the Letter to Plaintiff stated a dispute of the debt had to be in writing. However, because § 1692g(a)(3) of the FDCPA has an implied writing requirement, as explained *infra*, that factual allegation, even accepted as true, does not state a claim for relief under the FDCPA. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted. Thus, the Court should dismiss the Complaint in its entirety.

Although § 1692g(a)(3) of the FDCPA does not contain an explicit writing requirement, it must be read as imposing an inherent writing requirement or else the procedure would be inconsistent with the other debt dispute mechanisms under § 1692g and the other subsections of the section. Allowing oral disputes under § 1692g(a)(3) serves only to confuse consumers. Moreover, a writing requirement preserves the core protections of §§ 1692g(a)(3) through 1692g(b). Without it, consumers may be led to believe that an oral dispute triggers the further protections of §§ 1692g(a)(4), 1692g(a)(5) and 1692g(b) when, in fact, those protections are waived if not invoked in writing.

In reaching its decision, the *Graziano* court acknowledged the difference in language between § 1692g(a)(3), which does not expressly require that a debtor's dispute be in writing, and §§ 1692g(a)(4) and 1692g(a)(5), which do expressly require that the debtor's communications be in writing. The Court reasoned:

> Subsection (a)(3) states that unless the debtor disputes the debt within thirty days of receipt of notice, the debt collector will assume the debt to be valid. Section (a)(4) states that if the debtor disputes the debt in writing within thirty days, the debt collector must obtain verification of the debt and must send the debtor a copy of the verification. Subsection (a)(5) states that, if the debtor makes a written request, the debt collector must provide the name and address of the original creditor. Subsection (b) states that if the debtor disputes the debt in writing within thirty days, the debt collector must cease collection efforts until the debt collector has verified the debt. Adopting Graziano's reading of the statute would thus create a situation in which, upon the debtor's non-written dispute, the debt collector would be without any statutory ground for assuming that the debt was valid, but nevertheless would not be required to verify the debt or to advise the debtor of the identity of the original creditor and would be permitted to continue debt collection efforts. We see no reason to attribute to Congress an intent to create so incoherent a system. We also note that there are strong reasons to prefer that a dispute of a debt collection be in writing: a writing creates a lasting record of the fact that the debt has been disputed, and thus avoids a source of potential conflicts. We therefore conclude that subsection (a)(3), like subsections (a)(4) and (a)(5), contemplates that any dispute, to be effective, must be in writing.

*Graziano*, 950 F.2d at 112.

The *Graziano* court's foregoing analysis is sound and, respectfully, one which this Court should adopt in evaluating the holding in *Baez* to find that § 1692g(a)(3) of the FDCPA imposes a writing requirement. Thereupon, this Court should dismiss the entire Complaint because Plaintiff's allegation, even assumed as true, that the Letter to Plaintiff stated that a dispute of the debt had to be in writing, fails to state either of the two claims Plaintiff has brought against Defendant.

## CONCLUSION

Plaintiff has failed to allege a single concrete and particularized injury resulting from the alleged FDCPA violations. Thus, having failed to allege an injury-in-fact, Plaintiff does not have standing to bring suit, and this case must be dismissed.

In the alternative, should the Court find Plaintiff has standing, this case should be dismissed because Plaintiff's allegation, even assumed as true, that the Letter to Plaintiff stated that a dispute of the debt had to be in writing, fails to state either of Plaintiff's claims because the statute under which Plaintiff has sued requires a dispute of the debt to be in writing.

## RELIEF REQUESTED

WHEREFORE, Defendant GC Services Limited Partnership respectfully prays this Honorable Court grant this motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim, and for such other relief as this Court deems just and proper.

Dated: December 20, 2016                     Respectfully Submitted,

                                             /s/ Jeff Kominsky
                                             JEFF KOMINSKY
                                             FL Bar No. 69408
                                             Jeff.Kominsky@lewisbrisbois.com
                                             Lewis Brisbois Bisgaard & Smith LLP
                                             110 SE 6th St., Ste. 2600
                                             Fort Lauderdale, FL  33301
                                             (954) 728-1280
                                             (954) 728-1282 (Fax)

                                             Attorneys for Defendant,
                                             GC Services Limited Partnership

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically by the CM/ECF system on December 20, 2016, on all counsel or parties of record on the Service List below.

/s/ Jeff Kominsky
Jeff Kominsky

## SERVICE LIST

Leo W. Desmond
lwd@verobeachlegal.com
Desmond Law Firm, P.C.
5070 Highway A1A, Ste. D
Vero Beach, FL 32963
Telephone: (772) 231-9600
Facsimile: (772) 231-0300
Attorneys for Plaintiff,
James Alderman

Sovathary K. Jacobson
jacobson@verobeachlegal.com
Desmond Law Firm, P.C.
5070 Highway A1A, Ste. D
Vero Beach, FL 32963
Telephone: (772) 231-9600
Facsimile: (772) 231-0300
Attorneys for Plaintiff,
James Alderman