**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 2:16-CV-14508-ROSENBERG**

JAMES ALDERMAN, *on behalf of himself and*
*all others similarly situated*,

      Plaintiff,

v.

GC SERVICES LIMITED PARTNERSHIP,

      Defendant.

---

**DEFENDANT, GC SERVICES LIMITED PARTNERSHIP'S, MEMORANDUM OF**
**LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

      The Court should deny Plaintiff's motion for class certification because, as a threshold matter, the named Plaintiff lacks standing to bring this suit and, therefore, to confer subject matter jurisdiction. Further, even if, *arguendo*, Plaintiff had standing, his proposal to certify a class does not satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and his motion does not meet the requirements for class certification under Rule 23(b). Finally, even if, *arguendo*, Plaintiff had standing and his proposal to certify a class satisfied the requirements of Rule 23(a) and (b), the Court should deny Plaintiff's motion because under the terms of a binding arbitration agreement, which includes a class action waiver, Plaintiff is obligated to submit all his claims brought against Defendant in this action to single-party, binding arbitration. Accordingly, the Court should deny Plaintiff's motion for class certification, (Dkt. 35), for the following reasons, alone or in combination:

**BACKGROUND**

Plaintiff filed this lawsuit on November 14, 2016, as a potential class action claiming Defendant's debt collection practices violated the Fair Debt Collection Practices Act (the "FDCPA" or "Act"). Dkt. 1. On December 27, 2016, Plaintiff filed his First Amended Class Action Complaint. Dkt. 13. The named Plaintiff is an individual residing in Florida, who purchased items using his credit card issued by Synchrony Bank. Dkt. 13, at ¶¶ 3, 8-9. When Plaintiff failed to pay his debt owed to Synchrony Bank, Synchrony Bank retained Defendant, GC Services Limited Partnership, to collect Plaintiff's debt, which Plaintiff does not dispute. Dkt. 13, at ¶ 9.

In Defendant's attempts to collect Plaintiff's debt owed to its client, Synchrony Bank, Defendant sent a personalized letter to Plaintiff (the "Letter"), which stated in relevant part:

> As of the date of this letter, our records show you owe a balance of $4,884.00 to Synchrony Bank. If you dispute this balance or the validity of this debt, please let us know in writing. If you do not dispute this debt in writing within 30 days after you receive this letter, we will assume this debt is valid.

Dkt. 13-1. It is the wording of the above-quoted paragraph contained in the Letter, a copy of which is attached to the Amended Complaint, about which Plaintiff complains. *Id.*

The FDCPA requires debt collectors to send the consumer a written "validation" notice informing the consumer that unless the consumer, within 30 days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector. 15 U.S.C. § 1692g(a)(3). In this case, the Letter allegedly received by Plaintiff was the written validation notice, and it complied with the statutory requirements to give such notices. Dkt. 13-1.

Plaintiff alleges, albeit inaccurately, that the Letter misstated the method for disputing Plaintiff's debt. Dkt. 13, at ¶ 14. Specifically, Plaintiff claims the Letter violated 15 U.S.C. §

1692g(a)(3) because it "falsely and misleadingly states that Plaintiff must dispute the debt in writing despite the clear wording of 15 U.S.C. § 1692g(a)(3) which contains no writing requirement in order for the consumer to dispute the debt." *Id*. While the Eleventh Circuit Court of Appeals has not decided the question of whether § 1692g(a)(3) requires a debtor to dispute a debt in writing and there is a split among the circuit courts that have, Defendant recognizes and respectfully disagrees with this Court's holding in this case in which the Court denied Defendant's 12(b)(6) motion to dismiss concluding, "§ 1692g(a)(3) does not require a consumer to dispute the validity of the debt in writing before the debt collector may assume the debt is valid." Dkt. 45, pp. 3-4.

Plaintiff has moved to certify a class under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Dkt. 35, ¶¶ 7-13. As discussed herein, Plaintiff does not have standing to bring this suit and, even if he has standing, he fails in his burden to demonstrate a basis for class certification under Rules 23(a) and (b) of the Federal Rules of Civil Procedure. Further, even if, *arguendo*, Plaintiff had standing and his proposal to certify a class satisfies the requirements of Rule 23(a) and (b), the Court should deny Plaintiff's motion because under the terms of a binding arbitration agreement, which includes a class action waiver, Plaintiff is obligated to submit all his claims brought against Defendant in this action to single-party, binding arbitration.

## STANDARD FOR CLASS CERTIFICATION

The Supreme Court has directed that, before certifying a class, district courts must conduct a "rigorous analysis" of the prerequisites of Rule 23 of the Federal Rules of Civil Procedure. *General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982). In order for an action to fall under Rule 23, a party "must affirmatively demonstrate his compliance" with the Rule. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011)). "The party *seeking* class certification has the burden of proof." *Brown v.*

*Electrolux Home Prods.*, 817 F.3d 1225, 1233 (11th Cir. 2016). "And the entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, 'the party with the burden of proof loses.'" *Id.* (quoting *Simmons v. Blodgett*, 110 F.3d 39, 42 (9th Cir. 1997). "All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Id.*; *see Comcast Corp.,* 133 S. Ct. at 1432.

Here, Plaintiff fails to satisfy his burden to show the propriety of class certification. **For example, noticeably absent from Plaintiff's motion [Dkt. 35] and supporting memorandum [Dkt. 36] is *any* analysis of whether Plaintiff has proposed a class that is adequately defined and clearly ascertainable.** "Rule 23 implicitly requires that the 'proposed class is adequately defined and clearly ascertainable.'" *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). "[T]he plaintiff seeking certification bears the burden of establishing the requirements of Rule 23, including ascertainability." *Id.* at 947. "A plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible." *Id.* at 948.

"Under Rule 23, certification is proper where the proposed class[] satisf[ies] an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." *Id.* at 946. Here, after the Court analyzes the Rule 23(a) factors, the Court should analyze Plaintiff's motion under Rule 23(b)(3), as Plaintiff has pled in his motion [Dkt. 35, ¶ 13] and memorandum [Dkt. 36, pp. 11-14].

Rule 23(b)(3) requires Plaintiff to show "that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action

is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

**ARGUMENT & AUTHORITIES**

**POINT I**

**CLASS CERTIFICATION SHOULD BE DENIED
AND THIS ENTIRE ACTION DISMISSED FOR LACK OF SUBJECT MATTER
JURISDICTION BECAUSE PLAINTIFF LACKS STANDING TO BRING SUIT**

Threshold individual standing is a prerequisite for all actions, including class actions. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). "Individual standing requirements must be met by anyone attempting to represent his own interests or those of a class." *Navellier v. Fla.*, No. 16-11994, 2016 U.S. App. LEXIS 21473, at *6 (11th Cir. Dec. 1, 2016). This Court previously found the Plaintiff has standing [Dkt. 80] based upon an unpublished opinion of the Eleventh Circuit in *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016). The *Church* decision has since been at least tacitly overruled by the Eleventh Circuit in a published opinion.

Specifically, in *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016), the Eleventh Circuit clearly holds that a plaintiff must sustain a concrete harm to satisfy standing requirements. In *Nicklaw*, the Eleventh Circuit rejects the reasoning set forth in *Church*.  In this Court's recent Order Denying Defendant's Motion to Dismiss and/or Compel Arbitration [Dkt. 80], the Court relies, in part, on the *Church* opinion.  As explained in more detail below, the reasoning in *Church* was rejected in *Nicklaw* and the *Church* decision is not in accord with Supreme Court authority.

Thus, in this matter, before the Court analyzes whether the named Plaintiff has satisfied the criteria of Rule 23 with respect to the absent, putative class members, the Court must continue to consider whether Plaintiff has standing to bring this suit for himself.  As the recent decision of the

Supreme Court in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) and the Circuit Court's decision in *Nicklaw* make clear, Plaintiff lacks standing.  Even if Plaintiff had standing, his proposed class does not.

A person has constitutional standing to bring a suit in federal court if, among other things, he or she has "suffered an injury in fact." *Spokeo*, 136 S. Ct. at 1547. In *Spokeo*, the plaintiff asserted he could satisfy the injury in fact requirement without alleging any concrete harm merely by asserting the occurrence of a statutory violation. That is, just as the Plaintiff does in the instant case, the plaintiff in *Spokeo* maintained his allegation of a violation of "his statutory rights," with nothing more, sufficed to establish injury in fact. The Supreme Court flatly rejected such an assertion. Writing for the majority, Justice Alito explained that an "[i]njury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Id.* at 1548 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). That is, a statutory violation alone is insufficient for purposes of establishing constitutional standing. Rather, to "establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992)). Since the plaintiff in *Spokeo* alleged a statutory violation but, like the Plaintiff here, failed to allege any actual harm caused by the alleged statutory violation, the plaintiff lacked standing. The *Spokeo* Court explained that, to qualify as "concrete," an injury "must actually exist," and it must be "'real' and not 'abstract.'" *Id.* at 1548. This means a plaintiff does not automatically satisfy the injury in fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1548. Instead, "**Article III standing requires a concrete injury even in the context of**

**a statutory violation**." *Id.* at 1548 (emphasis added). Accordingly, a "bare procedural harm" under a federal statute, "divorced from any concrete harm," as *Plaintiff alleges here*, does not "satisfy the injury in fact requirement." *Id.* at 1548.

Following *Spokeo*, the district court in *Sartin v. EKF Diagnostics, Inc.*, 2016 U.S. Dist. LEXIS 86777, 2016 WL 3598297, at *3 (E.D. La. July 5, 2016), dismissed claims under the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("TCPA"), under Rule 12(b)(1) based on, once again, a finding of lack of standing where, as here, the plaintiff alleged no more than a statutory violation. *Id.* In *Sartin*, and similar in content, although more briefly stated, the court found the plaintiff's only reference within his complaint "to any kind of injury appears in a single sentence, which states that defendants' failure to comply with the TCPA's requirements 'caus[ed] Plaintiff and Plaintiff Class to sustain statutory damages.'" *Id.* To be sure, dismissal of claims alleging no more than statutory violations, as the plaintiff in *Spokeo* claimed *and as Plaintiff asserts in the case at bar*, have come quickly and consistently in light of the Supreme Court's clear ruling based on facts quite similar to those rejected in *Spokeo*.

In *Dolan v. Select Portfolio Servicing*, 2016 U.S. Dist. LEXIS 101201 (E.D.N.Y. Aug. 2, 2016), addressing standing to sue for alleged violations of various provisions of 12 U.S.C. §§ 2601-2617, the Real Estate Settlement Procedures Act ("RESPA"), the court was required to apply the distinction between statutorily-granted standing for public interest causes of action as opposed to individual claims, such as those advanced by Plaintiff in the instant case, as differentiated in *Spokeo*. In a well-reasoned and well-supported opinion, the court in *Dolan* explained that *Spokeo* affirms "the principle that a claim of a bare procedural statutory violation will be insufficient to confer standing, except in situations where Congress clearly intended to create a right to bring suit regardless of the

existence or non-existence of actual harm, such as the Supreme Court found with respect to the statutes at issue in *Public Citizen*[1] and *Akins*[2]." *Dolan*, at *24. This important distinction is clear from the Supreme Court's majority opinion in *Spokeo* as well as Justice Thomas' more thorough explication on the issue of public interest standing – which is not an issue in the instant case – in his concurring opinion.

Specifically, in *Dolan* the court distinguished between Congress' intent to create such public standing for claims under 12 U.S.C. § 2607, because that provision was clearly intended to benefit the public at large to create such a right, whereas claims under 12 U.S.C. § 2605 are for individual, not public, harms, similar to those of which Plaintiff complains here under the FDCPA. Specifically, the *Dolan* court explained:

> [i]n contrast to Section 2607, the conduct that Section 2605 seeks to regulate does not implicate the type of diffuse, intangible injury at issue in *Akins* and *Public Citizen*, but rather seeks to redress actual damages caused by the failure of one private party, *i.e.*, a loan servicer, to provide specific information to another private party, *i.e.*, a borrower.

*Dolan*, at *16.

Hence, and as required in light of *Spokeo* and now *Nicklaw* in this Circuit, the *Dolan* court held the plaintiff lacked standing to pursue claims brought under § 2605 of the statute in the absence of anything more than an asserted violation of the notification requirements of the statute, a claim distinctly similar to Plaintiff's claim in the instant case. As the *Dolan* opinion makes quite clear, where, as in the case at bar, a plaintiff alleges only a violation of an individual right to a notice – but absolutely no resulting actual injury caused by an alleged failure – there simply is no standing. This point is indeed obvious from the Supreme Court's opinion, *including Justice Ginsburg's dissenting*

---

[1] *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 109 S. Ct. 2558 (1989).

[2] *FEC v. Akins*, 524 U.S. 11, 118 S. Ct. 1777 (1998).

*opinion*, in *Spokeo*, as no writer suggested, as Plaintiff posits here, the simple question of whether a notice statute may have been violated. In the instant case, the FDCPA provision at issue presents the same type of individual protection as § 2605 of RESPA and the FCRA provision raised by the plaintiff in *Spokeo*. As *Spokeo*, and *Dolan*, make clear, in such a case, there is no standing.

Indeed, recognizing the distinction the Supreme Court drew in *Spokeo*, as explained in greater detail in Justice Thomas' concurring opinion, the *Dolan* court specifically criticized the dicta in the Eleventh Circuit's opinion in *Church*[3], which clearly failed to follow *Spokeo*'s mandate. Explaining the inaccurate conclusion stated by the panel in dicta in *Church*, which appears to have been based upon *the very logic applied by the Ninth Circuit and rejected by the Supreme Court*, the judge in *Dolan* explained that she:

> respectfully disagrees with [the decision in *Church*], based on this Court's conclusion that the cases cited in *Spokeo* as examples of intangible harm sufficient to confer standing, *i.e.*, *Akins* and *Public Citizen*, involved interests of much greater and broader significance to the public than those at issue in *Church*. … In short, the Court rejects the view that *Spokeo* established the proposition that *every* statutory violation of an "informational" right "automatically" gives rise to standing.

*Dolan*, at fn. 7 (emphasis in original).

**The Supreme Court took the exact same position in *Spokeo*; otherwise, it would not have criticized the Ninth Circuit's application of the same logic in reversing that Court's decision on the very issue and, based on the logic applied in *Church*, would have found standing.**

Again, the reasoning in *Church* was recently rejected in *Nicklaw*. Unlike *Church*, *Nicklaw* is a published opinion which is binding on the Eleventh Circuit and this Court. In *Nicklaw*, the

---

[3] *Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414 (11th Cir. July 6, 2016).

Eleventh Circuit was faced with the issue of whether the plaintiff had standing to sue when he alleged only that the defendant failed to record a satisfaction of the plaintiff's mortgage within the time period required by state law. *See Nicklaw*, 839 F.3d at 1000. The Eleventh Circuit held the plaintiff's allegations were insufficient to establish standing. *Id*. It rejected the plaintiff's argument, utilized by *Church*, 654 F. App'x at 994, that the plaintiff suffered a concrete harm by the defendant's failure to comply with this rule simply because the state legislature intended to create a right to have the satisfaction of a mortgage timely recorded. *See Nicklaw*, 839 F.3d at 1002-03. Instead, the Eleventh Circuit noted the plaintiff alleged neither harm nor a risk of harm, and emphasized that **standing is not met simply because a statute creates a legal obligation and allows a private right of action for failing to fulfil this obligation**. *Id*. at 1003 (citing *Spokeo*, 136 S. Ct. at 1550).

The reasoning in *Church* is also against the weight of the authorities in other circuits. For example, in *Braitberg v. Charter Commc'ns, Inc*., 836 F.3d 925 (8th Cir. 2016), the Eighth Circuit held a plaintiff was without standing to sue on the defendant's retention of his records in violation of the Cable Communications Policy Act because the plaintiff did not allege any concrete harm that resulted from retaining the records. The court rejected the plaintiff's argument that violation of the statute was itself an actual injury under Article III. *Braitberg*, 836 F.3d at 929-30. "With the benefit of Spokeo's guidance," the Eighth Circuit concluded that the plaintiff's failure to allege harm, namely, the disclosure of personal information to any third party, was fatal to his claim of standing. *Id*. at 930-31.

Similarly, in *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016), the Second Circuit construed *Spokeo* to mean that (1) a plaintiff may establish standing based on an alleged procedural violation if Congress conferred that procedural right to protect a plaintiff's concrete interest and if

that violation presents a risk of harm to that interest; and (2) even if Congress conferred procedural rights, a plaintiff's claim for standing fails if he cannot demonstrate a material risk of harm to the underlying interest.  In *Strubel*, the court held the plaintiff was without standing to sue for statutory damages on the basis of certain violations of the federal Truth in Lending Act.  *Strubel*, 842 F.3d at 191.  One of the omitted notices concerned a consumer's obligation to provide timely notice to prevent automatic payment of a disputed charge.  *Id*.  The plaintiff lacked standing to sue for this omission because she could not show the omission risked concrete injury.  *Id*.  It was undisputed that the defendant did not offer an automatic payment plan for the credit card in question, and there was no evidence that the plaintiff ever agreed to an automatic payment plan.  *Id*. at 191-92.

Likewise, the Sixth Circuit, applying *Spokeo*,  recently held that bare allegations of conduct violating the FDCPA without allegations supporting a concrete injury will not confer standing. *Lyshe v. Levy,* 854 F.3d 855 (6th Cir. 2017).  There, the plaintiff alleged that a debt collector violated the FDCPA by failing to comply with Ohio state court discovery rules, namely by failing to provide an electronic copy of discovery requests and stating, incorrectly, that denials to requests for admissions had to be verified. *Id.* at 857.  The plaintiff failed to allege that harm resulted from the misstatements. *Id.*  The plaintiff also did not allege he was misled by the  defendant's statements, or that he had even responded to the discovery. *Id.* The plaintiff instead argued that the receipt of the incorrect statements, alone, satisfied the requirement of concrete harm. *Id.* at 858.  The Sixth Circuit rejected the plaintiff's argument, characterizing "this view of the law as untenable." *Id.* at 859.

Here, Plaintiff alleges no more than *hypothetical*, procedural violations of a federal statute without any showing the hypothetical violations caused Plaintiff harm or any material risk of harm. Tellingly, and just like the plaintiffs in *Sartin, Nicklaw and Lyshe, Plaintiff fails to provide any information in his Amended Complaint regarding any harm* that has befallen him so as to

demonstrate a concrete injury and, thus, standing. Dkt. 13. The lack of concrete injury becomes

undeniable as, within his own Amended Complaint, Plaintiff did not allege he suffered *any* injury

whatsoever. To be clear, nowhere in his entire Amended Complaint did Plaintiff allege he suffered

any injury. Accordingly, Plaintiff's motion for class certification [Dkt. 35] should be denied because

he lacks standing to bring suit.

## POINT II

### CLASS CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFF HAS FAILED TO PROPOSE AN ADEQUATELY DEFINED AND CLEARLY ASCERTAINABLE CLASS IN WHICH HE IS A MEMBER

Even if Plaintiff had standing, class certification is inappropriate in this case. Plaintiff has

failed to prove an adequately defined and clearly ascertainable class. As stated *supra*, "Rule 23

implicitly requires that the 'proposed class is adequately defined and clearly ascertainable.'" *Karhu*,

621 F. App'x at 946 (quoting *Little*, 691 F.3d at 1304). "[T]he plaintiff seeking certification bears

the burden of establishing the requirements of Rule 23, including ascertainability." *Id*. at 947 (citing

*Heaven*, 118 F.3d at 737).

Setting aside the fact that Plaintiff has made absolutely no attempt in his motion for class

certification [Dkt. 35] or memorandum in support [Dkt. 36] to establish his proposed class is

adequately defined and clearly ascertainable, **which on that basis alone the Court should deny**

**Plaintiff's motion**, this case is not, and will not be, appropriate for class treatment because

Plaintiff's proposed class is not adequately defined and clearly ascertainable, nor is there a reliable

and administratively feasible mechanism for determining whether putative class members fall within

the class definition. "Rule 23's requirements must be interpreted in keeping with Article III

constraints." *Amchem Prods. v. Windsor*, 521 U.S. 591, 612-13, 117 S. Ct. 2231 (1997). More

specifically, in light of the clear mandate explained in *Spokeo* to demand proof of a concrete injury

for each and every claimant to have standing, *extensive* inquiry would be required to determine whether each alleged, absent class member has a concrete injury *of his or her own*, and thus standing to bring suit, a threshold prerequisite to be a member of any putative class. Indeed, the Supreme Court has indicated that here Plaintiff would have to show each putative class member suffered a concrete injury and thus has standing. He has not even attempted to do so.

The Supreme Court has recognized as a threshold issue implicit in Rule 23, *which Plaintiff has wholly failed to address in his motion [Dkt. 35] or memorandum [Dkt. 36], reason enough for the Court to deny the motion*, that the named plaintiff seeking certification must propose an identifiable class in which he is a member. *General Telephone Co.,* 457 U.S. at 156. "A class representative must be part of the class and possess the same interest **and suffer the same injury** as the class members." *E. Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403, 97 S. Ct. 1891, 1896 (1977) (internal quotations omitted) (emphasis added).

In the present case, numerous factual disputes concerning whether each proposed class member has suffered the requisite "concrete and particularized" harm or risk of harm to have standing to bring suit would result in subjective mini-trials of each putative class member and thus make certification improper. Moreover, Plaintiff's proposed class definition fails to provide specificity and an objective manner of determining whether *all* the members of the proposed class have standing to bring suit.

Simply put, Plaintiff's proposed class definition fails to define a class that is adequately defined and clearly ascertainable because it is impossible to ascertain (1) who actually received the letter, (2) who among them actually opened the letter, (3) who actually read the letter, and (4) for those proposed class members who did read the letter, suffered the requisite "concrete and particularized" injury to have standing to bring suit. Importantly, the only people who, in theory,

*could have* suffered the requisite "concrete and particularized" injury would be those who, *after* having actually received, opened, and read the letter, chose not to dispute their debt. Indeed, the proposed class members who, after having received, opened, and read the subject letter, wrote to Defendant to dispute their debt *could not have suffered any injury*. The difficulties inherent in identifying which of the proposed class members did and did not contact Defendant to dispute their debt after having received, opened, and read the subject letter, present serious administrative burdens that are inconsistent with the efficiencies expected in a class action. Many of the benefits that are the hallmark of a proper class action would be lost if the Court were required to make individual factual inquiries in order to determine the members of the proposed class.

Furthermore, the Plaintiff's failure to establish an adequately defined and clearly ascertainable class alone is another basis upon which the Court may, and should, deny certification. Nevertheless, Defendant will proceed to analyze the application of Rule 23(a) and show there is no merit in Plaintiff's class allegations as well.

## POINT III

### PLAINTIFF HAS FAILED TO SATISFY THE NUMEROSITY REQUIREMENT

Rule 23(a)(1) requires the proposed class be so numerous that joinder of all members is impracticable. This is often referred to as the numerosity requirement. "The numerosity requirement should not be applied in a yardstick fashion – i.e. whether 25 class members are enough or too few to satisfy Rule 23(a)(1)." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986) (Melton, J.).

Here, Plaintiff has failed to meet his burden of demonstrating the number of persons he seeks to represent *and who actually have standing to sue*. All of the persons referenced in Plaintiff's memorandum [Dkt. 36, p. 6] to whom Defendant sent a letter containing the language at issue, *without regard to whether those persons actually received, opened, and read the letter*, and then

decided not to contact or attempt to contact Defendant to dispute their debt, are disputed members of the proposed class. Plaintiff correctly states that Defendant sent approximately 19,793 such letters to addresses in Florida, but he does not identify any means by which he or the Court may create a class of people who actually *received, opened, and read* the letter, and then decided not to contact Defendant to dispute their debt, the only means by which any putative class member could have suffered even a (legally insufficient) statutory violation, let alone the requisite actual, concrete injury necessary to have standing.

In attempting to meet the numerosity requirement, Plaintiff stated in his memorandum that Defendant has stated the proposed class consists of 19,793 persons. Dkt. 36, p. 6. However, Plaintiff does not contend Defendant can identify who actually received, opened, and/or read the letter in question, let alone who suffered any actual injury from its wording. Clearly, only people who, after reading the subject letter, decided not to contact Defendant to dispute their debt would be affected at all by the language of which Plaintiff complains. Plaintiff, has therefore, not met the numerosity requirement simply by listing a number because, as explained *supra*, Plaintiff has wholly failed to allege any member, much less all, of the proposed class received, opened and read the letter or that any who did suffered the requisite "concrete and particularized" injury to have standing to bring suit. For these reasons, Plaintiff has not satisfied the numerosity requirement, and the Court should deny class certification on this basis alone.

## POINT IV

## PLAINTIFF HAS FAILED TO SATISFY THE COMMONALITY REQUIREMENT

Yet another reason to deny class certification is the lack of commonality. Rule 23(a)(2) provides that, in order for a class to be certified, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has held, "[w]hat matters to class

certification ... is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541 (2011).

Here, without question, Plaintiff has failed to satisfy *his burden* of establishing the commonality requirement of Rule 23. In support of his flawed argument for commonality, Plaintiff posits at page 8 of his memorandum, "[t]o establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter," a quote taken from *Swanson v. Mid Am, Inc.*,186 F.R.D. 665, 668 (M.D. Fla. 1999), citing *Savino v. Computer Credit*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997) and *Wollert v. Client Svcs., Inc.*, 1998 WL 474118 (N.D. Ill. 1998). However, neither the *Savino* court nor the *Wollert* court held that to establish commonality it is sufficient that a plaintiff simply *allege* all class members received the same collection letter. To the contrary, the United States Supreme Court held, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. But, even if merely alleging that all class members *received* the same collection letter was sufficient to establish commonality, Plaintiff has not even done that. To be sure, the extent of Plaintiff's "affirmative demonstration" of the commonality requirement is the allegation:

> [e]ach Class member was *mailed* an initial communication letter that included a requirement that the consumer debtor dispute his or her debt in writing or the Defendant would assume the debt was valid, substantially identical to the request for a written dispute of the debt in the Demand Letter sent to Plaintiff that misleadingly stated "If you dispute this balance or the validity of this debt, please let us know in writing. If you do not dispute this debt in writing within 30 days after you receive this letter, we will assume this debt is valid.

Dkt. 36, p. 8 (emphasis added).

Conspicuously absent from Plaintiff's cursory analysis is any argument dismissing the possibility that Defendant's alleged, unlawful conduct did not cause all class members to suffer the *same injury or any injury at all*. *See Wal-Mart,* 564 U.S. at 349-50. Of the 19,793 proposed class members, it is by no means inconceivable that many of them, upon receiving the subject letter, *were not injured* from it, notwithstanding its alleged deficiency indicating that a dispute had to be in writing, by nevertheless writing or even calling Defendant to dispute their debt, *disputes, in any form, Defendant honored*. See attached Exhibit A, Declaration of Mark Schordock. That is, regardless of the form of such disputes from any putative class member, Defendant honored them.

Furthermore, of the 19,793 proposed class members, it is conceivable many of them, upon reading the section of the subject letter explaining how a *written* dispute of their debt would require Defendant to obtain and furnish verification of their debt, disputed their debt in writing, regardless of the alleged, deficient section of the subject letter that indicated disputes had to be in writing. To be sure, Plaintiff has provided nothing to show a scenario like that, where a portion of the 19,793 proposed class members would not have been injured at all, did not or could not have happened.

Furthermore, as Plaintiff seeks only statutory damages [Dkt. 13, p. 9], the question of actual, as opposed to merely statutory, damages undermines Plaintiff's argument for commonality. It is obvious the possibility, that some of the proposed class members have actual damages in addition to statutory damages, belies Plaintiff's argument that he has satisfied the commonality requirement. For these reasons, Plaintiff has not satisfied the commonality requirement, and the Court should deny class certification on this basis alone.

## POINT V

## PLAINTIFF HAS FAILED TO SATISFY THE TYPICALITY REQUIREMENT

Plaintiff also fails to prove typicality. Rule 23(a)(3) requires the claims of the representative(s) be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality limits the class claims to those fairly encompassed by the named Plaintiff's claims. *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). In *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1357 (11th Cir. 2009), the Eleventh Circuit stated, "[a] class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." While commonality is concerned with the group's characteristics as a whole, typicality "refers to the individual characteristics of the named plaintiff in relation to the class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009).

In the case at bar, according to his First Amended Complaint, Plaintiff is seeking statutory, but no actual, damages from allegedly receiving the Letter that allegedly violated the FDCPA because of allegedly deficient wording that indicated a dispute of Plaintiff's debt needed to be in writing. That is essentially all that is known about the characteristics of Plaintiff's claim. Dkt. 13, generally. As with numerosity and commonality, Plaintiff's analysis of the typicality requirement in this case is strikingly brief. In his memorandum, the extent of Plaintiff's typicality analysis is presented in two, conclusory sentences – "Here, [Defendant's] collection letters failed to disclose the rights provided by 15 U.S.C. § 1692g(a)(3). Therefore, the typicality requirement of Rule 23(a)(3) has been met because each member of the Class was subjected to the same violation of the FDCPA as Plaintiff." Dkt. 36, pp. 9-10. But, how can Plaintiff's claims be typical of the class when Plaintiff is seeking only statutory damages while any number of putative class members may have injuries for which actual damages could be sought? Certainly it is possible some of the putative class members,

before reading the subject letter, knew of their debt and considered disputing it only to change their mind upon reading the subject letter, part of which indicated a dispute needed to be in writing. If the debts of those putative class members, as stated in their individualized letters, were, in fact, stated erroneously in some way, those class members could have claims for actual damages. Indeed, Plaintiff's claims involve facts that distinguish them from the claims of his fellow class members and undermine the typicality that Rule 23(a)(3) demands. For these reasons, Plaintiff has not satisfied the typicality requirement, and the Court should deny class certification on this basis alone.

**POINT VI**

**PLAINTIFF HAS FAILED TO SATISFY THE ADEQUACY REQUIREMENT**

Plaintiff also fails to prove adequacy. Rule 23(a)(4) permits a class to be maintained only if "the representative parties will fairly and adequately protect the interests of the class." The Eleventh Circuit held, "[t]his adequacy of representation analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co.*, 350 F.3d at 1189. "If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate." *Id. See* 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Proc.* § 1768, at 326 (2d ed. 1986) ("It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent.").

As with the aforementioned requirements of numerosity, commonality, and typicality, Plaintiff barely scratches the surface in analyzing the adequacy requirement. Without providing any analysis or supporting evidence, Plaintiff states and concludes:

> Here, Plaintiff and the Class members seek statutory damages as the result of Defendant's unlawful collection practices. Given the

> identical nature of the claims between Plaintiff and the Class
> members, there is no potential for conflicting interests in this action.
> There is no antagonism between the interests of the Plaintiff and
> those of the Class. Should there be Class members with actual
> damages, which is highly unusual, those members will have an ability
> to opt out of the class action and bring their own lawsuit.

Dkt. 36, p. 10. Based on that empty, confusing analysis, which initially alleges the nature of the

claims between Plaintiff and the absent class members is "identical," but then abruptly switches

gears by providing a contingency for those class members with actual damages, Plaintiff claims

"[t]he Rule 23(a)(4) representativeness requirement has been satisfied." Dkt. 36, p. 10.

In stark contrast to Plaintiff's memorandum in which he proclaims the nature of his claims

and those of the absent class members is identical [Dkt. 36, p. 10], Plaintiff testified at his deposition

that he doesn't know anyone who received a letter like the one he received and, therefore, wouldn't

know if those people who received the same letter had claims identical to his. Plaintiff testified as

follows:

> Q:  Other than yourself, Mr. Alderman, do you know of anyone else who
>     has received a letter like yours?
>
> A:  No.

Alderman Dep. 20:23-21:2 (Exhibit B).

> Q:  [Y]ou would agree with me that there's no -- that if you don't know
>     anyone else that received the letter like you received, you wouldn't know
>     if their claims are identical, would you?
>
> A:  Right.  I wouldn't know.

Alderman Dep. 25:25-26:6 (Exhibit B). Plaintiff also argues in his memorandum, "Plaintiff and the

Class members seek statutory damages as the result of Defendant's unlawful collection practices"

and "[s]hould there be Class members with actual damages, which is highly unusual, those members

will have an ability to opt out of the class action and bring their own lawsuit." Dkt. 36, p. 10.

However, as shown by his deposition testimony, Plaintiff is oddly unable to demonstrate how he

would safeguard the interests of those absent class members who might have a claim for actual damages. Plaintiff testified as follows:

> Q:   [H]ow are you, as class representative in this case who's not making a claim for actual damages, going to safeguard the interests of those class members who may have claims for actual damages?
>
> A:   I couldn't be able to do anything for them unless I found out about it.

Alderman Dep. 23:3-10 (Exhibit B). Likewise, Plaintiff's declaration in support of his motion for class certification doesn't mention anything about absent class members with actual damages being given the opportunity to opt out. Dkt. 37.

Furthermore, Plaintiff has not satisfied the adequacy requirement because fundamental conflicts exist. It is certainly conceivable many of the putative class members will claim to have been harmed by the same conduct that benefitted other members of the class. Of the 19,793 proposed class members, it is by no means inconceivable that many of them, unaware of their rights before reading the subject letter, read the portion of the letter that explained how a written dispute required Defendant to obtain and furnish verification of their debt and, therefore, wrote to Defendant disputing their debt, thereby benefitting from the subject letter, notwithstanding its alleged deficiencies contained in a different part of the letter.

Finally, it is evident from Plaintiff's deposition testimony that Plaintiff does not have sufficient knowledge and understanding of this case to qualify as an adequate class representative. "Class representatives should not only have a working knowledge of the case, but should possess a level of understanding of the case to be capable of controlling or prosecuting the litigation." *Eslava v. Gulf Tel. Co.*, No. 04-00297-KD-B, 2007 U.S. Dist. LEXIS 57959, at *12-13 (S.D. Ala. Aug. 7, 2007) (internal quotations and citations omitted).

As alleged in his First Amended Complaint, motion for class certification, and memorandum in support thereof, Plaintiff claims Defendant violated § 1692g(a)(3) of the FDCPA by stating the following in its Letter to Plaintiff:

> If you dispute this balance or the validity of this debt, please let us know in writing.  If you do not dispute this debt in writing within 30 days after you receive this letter, we will assume this debt is valid.

Dkt. 13, ¶¶ 14, 16; Dkt. 35, ¶ 9; Dkt. 36, pp. 1, 6. To be sure, in all of his pleadings filed with the Court in this case, Plaintiff has not alleged any other language contained in Defendant's Letter violated the FDCPA. However, when asked at his deposition to identify the language in the Letter he was claiming in this action violated the FDCPA, Plaintiff identified a completely different paragraph to the exclusion of the paragraph identified above. Plaintiff testified as follows:

> Q:  [W]hy did you sue my client, GC Services, last year?
>
> A:  Defective letter.
>
> …
>
> Q.  And is Exhibit 1 to your deposition a copy of the letter you just referred to that's the basis for your lawsuit against GC Services?
>
> A:  Well, it certainly looks like it.
>
> …
>
> Q:  Now, is it your allegation in your lawsuit that the third paragraph that begins with the word "however," that the wording of that paragraph is the basis for your allegation that the FDCPA was violated.
>
> A:  Yes.
>
> …
>
> Q.  Is there anything else about the letter that you base your lawsuit on, that the letter is in violation of the act, other than what we've talked about?
>
> A:  No.

Alderman Dep. 13:8-11; 13:23-14:3; 16:15-21; 18:24-19:4. (Exhibit B). The paragraph in the Letter that begins with the word "however" states:

> However, if you do dispute all or any portion of this debt in writing within 30 days of receiving this letter, we will obtain verification of

the debt from our client and send it to you.  Or, if within 30 days of receiving this letter you request in writing the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank.

Alderman Dep., Exhibit 1 (Exhibit B).

As evidenced by Plaintiff's lack of knowledge and understanding about his own case, Plaintiff has failed to demonstrate he is qualified to act as class representative. For these reasons, Plaintiff has not satisfied the adequacy requirement, and the Court should deny class certification on this basis alone.

## POINT VII

## PLAINTIFF HAS FAILED TO SATISFY THE REQUIREMENTS OF RULE 23(b)(3)

Plaintiff seeks class certification under Rule 23(b)(3) [Dkt. 36, pp. 11-14], but fails to prove either of the Rules' two elements. Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast*, 133 S. Ct. at 1432. Indeed, a district court conducting a Rule 23(b)(3) inquiry is obligated to take a "close look" at whether common questions predominate. *See id*. Rule 23 "does not set forth a mere pleading standard." *Wal-Mart*, 131 S. Ct. at 2551. Therefore, a mere *assertion* by class counsel that common issues predominate is not enough.

Individual questions regarding the proposed class members' standing to bring suit overwhelm any questions common to the class, thus defeating class certification. In this case, in order to have standing, an individual would have to prove he or she suffered the requisite "concrete and particularized" injury as a result of receiving and opening one of the subject letters and, then, upon reading it, not contacting Defendant to dispute his or her debt. Plaintiff alleges he and each proposed

class member have somehow suffered what can be best described as an abstract injury as a result of receiving a letter from Defendant which contained language indicating a dispute of their debts needed to be in writing. However, it is certainly conceivable many of the 19,793 proposed class members upon receiving the subject letter threw it away unopened, just as some may have written to Defendant to dispute their debt despite the allegedly deficient language. Thus, many of the proposed class members may not have suffered any injury and, therefore, not have standing. Moreover, the proposed class members with standing cannot be readily identified absent an addressee by addressee review.

In this case, individualized proof of the action or inaction of each proposed class member upon his or her receipt of the subject letter from Defendant is necessary to determine whether he or she suffered the requisite "concrete and particularized" injury to have standing to bring suit. When such individualized proof of standing is involved, it eliminates the efficiencies associated with adjudicating claims on a class-wide basis. Accordingly, individual issues heavily predominate over any common issues that may exist, making this action inappropriate for certification under Rule 23(b)(3).

## POINT VIII

### PLAINTIFF IS OBLIGATED TO SUBMIT HIS CLAIMS TO SINGLE-PARTY, BINDING ARBITRATION

The Court should deny Plaintiff's motion for class certification because under the terms of a binding arbitration agreement, which includes a class action waiver, Plaintiff is obligated to submit all of his claims brought against Defendant in this action to single-party, binding arbitration. All of the claims asserted by Plaintiff in this case fall squarely under the arbitration agreement and class action waiver contained in Plaintiff's credit card account agreement ("Account Agreement"), and

there is no justification for any attempt by Plaintiff to circumvent his agreement that his claims be heard exclusively in single-party, binding arbitration.

### Plaintiff is bound to Single-Party, Binding Arbitration

Pursuant to the Federal Arbitration Act ("FAA"), "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. As held in *Monteverde v. W. Palm Beach Food & Bev., LLC*, No. 9:15-CV-81203, 2016 U.S. Dist. LEXIS 38649, at \*14 (S.D. Fla. Mar. 23, 2016), "[i]n reviewing a motion to compel arbitration, a district court must consider three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." *Id*. at \*14. A valid arbitration agreement, which includes a class action waiver, exists here that applies to the claims raised by Plaintiff. Defendant's right to compel arbitration has not been waived and this Court must order the parties to single-party, binding arbitration.

### A Valid Arbitration Agreement and Class Action Waiver Exists

A court may not order arbitration under the FAA until it is first satisfied that a valid arbitration agreement exists. *Sims v. Clarendon Nat'l Ins. Co*., 336 F. Supp. 2d 1311, 1320 (S.D. Fla. 2004). "Although the FAA governs the applicability of arbitration agreements, state law governs issues 'concerning the validity, revocability, and enforceability of contracts generally.'" *Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009). Although contractual choice-of-law provisions are presumptively valid under Florida law, this presumption recedes when the law of the chosen forum effects a result in contravention of a strong public policy of the State. *Caban v. J.P. Morgan Chase & Co*., 606 F. Supp. 2d 1361, 1365 (S.D. Fla. 2009).

Plaintiff's Account Agreement contains a choice of law provision expressly applying Utah law to the extent relevant. Exhibit C. Utah law does not conflict here: "[a] court applying Utah law must first conclude that arbitration is a remedy which has been bargained for by the parties. Only when such agreement on arbitration exists may [courts] encourage arbitration by liberal interpretation of the arbitration provisions themselves." *Arciniega v. Check Mart of Fla., Inc.*, No. 2:14-cv-742-FtM-38CM, 2015 U.S. Dist. LEXIS 25544, at *4 (M.D. Fla. Mar. 3, 2015) (applying *Reed v. Davis County Sch. Dist.*, 892 P.2d 1063, 1065 (Utah Ct. App. 1995)). Under Utah law, "[t]he minimum threshold for enforcement of an arbitration agreement is direct and specific evidence of an agreement between the parties. Direct and specific evidence requires non-inferential evidence.

The relevant portions of the arbitration agreement, including the class action waiver, contained within Plaintiff's Account Agreement state:

> **RESOLVING A DISPUTE WITH ARBITRATION**
>
> **PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**
>
> • **What claims are subject to arbitration**
>
> 1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or Sam's Club (and its affiliates) if it relates to your account, except as noted below.
>
> ....
>
> • **No Class Actions**
>
> **YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY**

**GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT AN ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.**

If a court determines that this paragraph is not fully enforceable, only this sentence will remain in force and the remainder will be null and void, and the court's determination shall be subject to appeal. ….

….

• **Governing Law for Arbitration**

This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award.

• **How to reject this section.**

**You may reject this Arbitration section of your Agreement. If you do that, only a court may be used to resolve any dispute or claim. To reject this section, you must send us a notice within 60 days after you open your account or we first provided you with your right to reject this section. The notice must include your name, address and account number, and must be mailed to GE Capital Retail Bank, P.O. Box 965012, Orlando, FL 32896-5012. This is the only way you can reject this section.**

Exhibit C.

Here, Plaintiff expressly agreed to submit his claims in this action to single-party, binding arbitration. As established by the attached declaration, in March 2009, Plaintiff applied online to Synchrony Bank, then known as GE Capital Retail Bank, for a Sam's Club Discover Card Account. Exhibit C. During that online, application process, Plaintiff signed his name to the application electronically. Exhibit C. The design of the online, account application process used by Plaintiff to

submit his application would not have allowed him to submit his application online without first electronically checking the box on the screen indicating his acceptance of the terms of the account agreement displayed on the screen. Exhibit C.

The current terms of the Account Agreement for Plaintiff's Sam's Club Discover Card, which card has since been replaced by a Sam's Club MasterCard, were enclosed in Plaintiff's November 27, 2011, monthly billing statement, a true and correct copy of which are attached to Exhibit C hereto and the relevant parts of which are quoted *supra*.

Plaintiff was notified by a change in terms notification enclosed in his April 27, 2014, Sam's Club Discover Card monthly billing statement that his Sam's Club Discover Card program was ending and being replaced by the Sam's Club MasterCard program.  A true and correct copy of the change in terms notification enclosed in Plaintiff's April 27, 2014, Sam's Club Discover Card monthly billing statement is attached to Exhibit C hereto.

Synchrony Bank's records show that Plaintiff used his Sam's Club Discover Card and, later, his Sam's Club MasterCard to make purchases. Exhibit C. Synchrony Bank has no record of Plaintiff rejecting the Arbitration section of his Account Agreement. Exhibit C.

Plaintiff's use of his credit card amounts to acceptance of the terms of the Account Agreement. *Island Peak Ranch, LLC v. FIIK Inv. & Holdings, Inc*., No. 2:02-CV-562, 2008 U.S. Dist. LEXIS 51474, at *36 (D. Utah July 7, 2008).

Here, the plain language of the arbitration agreement provides that the parties to it agreed to single-party, binding arbitration of claims related to Plaintiff's account. Moreover, as established by Synchrony Bank's declaration, there is no record of Plaintiff rejecting the arbitration agreement, which includes the class action waiver. Exhibit C. The arbitration agreement, including its class action waiver provision, is valid and enforceable under Utah state law.

The language of Plaintiff's arbitration agreement, including the class action waiver provision, is unambiguous. "The FAA, standing alone, requires enforcement of the Arbitration Agreements according to their terms, which, in this case, means individual, not collective, arbitration." *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1330 (11th Cir. 2014). Utah law also expressly permits the inclusion of class-action waivers in consumer credit agreements. *See* Utah Code Ann. § 70C-4-105. Under §70C-4-105, "a creditor may contract with the debtor of an open-end consumer credit contract for a waiver by the debtor of the right to initiate or participate in a class action related to the open-end consumer credit contract." *See also Utah Cod. Ann*. § 70C-3-104 (same for close-end agreements); *Miller v. Corinthian Colls., Inc*., 769 F. Supp. 2d 1336, 1341 (D. Utah 2011). The class action waiver is part of the arbitration provision in the Account Agreement. Read as a whole, as it must be, the Plaintiff's contractual agreement binds him to single-party arbitration with Synchrony Bank or its agents. *See Lee v. Barnes*, 977 P.2d 550, 552 (Utah Ct. App. 1999).

### Plaintiff's Claims against Defendant are Arbitral Issues

Under the subheading "What claims are subject to arbitration" the Account Agreement states that arbitration applies to "any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or Sam's Club (and its affiliates) if it relates to your account …." Exhibit C. The agreement therefore applies to all claims related to Plaintiff's account. *See Anders v. Hometown Mortg. Servs*., 346 F.3d 1024, 1028 (11th Cir. 2003) ("Any disputes means all disputes, because "'any' means all.").

"The Eleventh Circuit has held that a claim "relates to" a contract if the dispute giving rise to the claim "occurs as a fairly direct result of the performance of contractual duties" and if there is "some direct relationship" between the dispute and the contract. *Cronin v. Portfolio Recovery Assocs., LLC*, No. 8:15-cv-00768-EAK-EAJ, 2016 U.S. Dist. LEXIS 57541, at *8 (M.D. Fla. Apr.

29, 2016). This Court has found that "there is no question" that claims arising from debt collection services "relate fairly directly to performance of contractual duties." *Bolanos v. First Investors Servicing Corp.*, No. 10-23365-CIV, 2010 U.S. Dist. LEXIS 115475, at *6 (S.D. Fla. Oct. 28, 2010). In *Bolanos*, the Court found the plaintiff had a duty to pay off its note under the original financing contract, and his claims relate to the actions of the creditor's assignee, in collecting that debt. "Moreover, [the plaintiff] could not even maintain this action without reference to the financing contract because the contract is necessary to show that [the plaintiff] is a "consumer" and that the underlying "debt" exists – two prerequisites to filing suit under the FDCPA and FCCPA." *Id.* To the extent Plaintiff seeks to make a claim against Defendant, whose actions were taken in pursuit of a debt created under the Plaintiff's Account Agreement, the claims "relate to" the Plaintiff's account, and are subject to the arbitration provision, including the class action waiver.

**Defendant's Right to Arbitrate has not been Waived**

On March 10, 2017, one day after Synchrony Bank confirmed to Defendant that Plaintiff's Account Agreement contained an arbitration agreement and class action waiver, Defendant emailed and faxed Plaintiff, through his counsel, a letter demanding Plaintiff submit all his claims currently pending against Defendant in this case to single-party arbitration and that Plaintiff dismiss or ask the Court to abate this action. Exhibit D. Plaintiff has refused Defendant's demand.

A two-part test applies to determine whether a party has waived the right to compel arbitration. *See Machado v. Labor Ready Se., Inc.*, No. 14-24234-CIV-LENARD/GOODMAN, 2015 U.S. Dist. LEXIS 151023, at *9 (S.D. Fla. Nov. 6, 2015). First, the court must "decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Ivax Corp. v. B. Braun of Am., Inc*., 286 F.3d 1309, at 1315-16 (11th Cir. 2002). "A party acts inconsistently with the arbitration right when the party 'substantially invokes the litigation machinery prior to

demanding arbitration.'" *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012) (quoting *S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)). Second, the court must determine "whether, by [acting inconsistently with the arbitration right], that party has in some way prejudiced the other party." *Id.* (quoting *Ivax Corp.*, 286 F.3d at 1316). "To determine whether the other party has been prejudiced, [the court] may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." *Id.*

        As noted above, Plaintiff filed this claim on November 14, 2016, and Defendant answered on January 9, 2017. It has been less than three months since that time, and only three weeks since Defendant learned of and received a copy of Plaintiff's Account Agreement. Most importantly, Defendant demanded single-party, binding arbitration the day after it received a copy of Plaintiff's Account Agreement. There has been no delay in demanding single-party, binding arbitration, nor has Defendant substantially undertaken litigation. Defendant's only affirmative action in this case is its attempt to dismiss the action, which is, of course, the opposite of manifesting an intent to litigate. Defendant's only other actions have been responsive to Plaintiff's motions and discovery, including the taking of Plaintiff's deposition. No other depositions have been taken or scheduled. "[W]aiver will normally be found only where ... both parties had engaged in extensive discovery." *Dockeray v. Carnival Corp.*, 724 F. Supp. 2d 1216, 1223 (S.D. Fla. 2010) (finding no waiver where defendant filed an answer and affirmative defenses and a motion for an extension of time, and plaintiff served discovery requests and noticed a deposition.). This litigation is at its inception, neither party has incurred significant expense in litigation, and there can be no basis for finding waiver.

**Although Defendant is a non-signatory to Plaintiff's Account Agreement, under Utah law, Defendant can enforce the arbitration provision in Plaintiff's Account Agreement under equitable estoppel**

State law governs whether an arbitration clause is enforceable against a non-signatory under the FAA. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S. Ct. 1896 (2009). Accordingly, this Court must look to the relevant state law to determine whether Defendant, as a non-signatory to Plaintiff's Account Agreement, can compel arbitration. *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1400 (S.D. Fla. 2014).

Even though Defendant is not a signatory to Plaintiff's Account Agreement, this Court should find, under Utah law, the doctrine of equitable estoppel prevents Plaintiff, whose claims in this action presume the existence of Plaintiff's Account Agreement, from escaping that contract's arbitration provision and class action waiver.

"Traditionally, five theories for binding a nonsignatory to an arbitration agreement have been recognized: . . . (5) estoppel." *Ellsworth v. Am. Arb. Ass'n*, 148 P.3d 983, 989 n.11 (Utah 2006). Although, in *Ellsworth*, the Utah Supreme Court considered only whether a nonsignatory *was bound* by an arbitration provision, the Court acknowledged the scenario presently before the Court, stating "[a]nother variety of nonsignatory estoppel is that enforced *by a nonsignatory* when the signatory plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the contract-mandated arbitration by relying on the fact that the defendant is a nonsignatory." *Ellsworth*, 148 P.3d at 989 n.12 (internal citations omitted). This is because "[the plaintiff] cannot, on the one hand, seek to hold the nonsignatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a nonsignatory." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 360-61 (5th Cir. 2003).

Given the opportunity, the Utah Supreme Court would likely rely on the standards articulated by the Eleventh Circuit in *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999). In

*MS Dealer*, the Eleventh Circuit held that estoppel will permit a nonsignatory to compel arbitration when the signatory "must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory." *Id.* at 947. In *MS Dealer*, the plaintiff purchased a car from an auto dealer and under the purchase agreement she was charged $990 for a service contract through MS Dealer. After discovering defects in the car, the plaintiff sued the auto dealer and MS Dealer, asserting claims for breach of contract, breach of warranty, fraud, and conspiracy. The plaintiff's purchase agreement with the auto dealer contained an arbitration clause under which MS Dealer sought to compel arbitration.

The Eleventh Circuit concluded the plaintiff's allegations relied on the purchase agreement because even though she did not allege a breach of that contract, her fraud and conspiracy claims each "ma[de] reference to and presume[d] the existence of the $990 charge" and "depend[ed] entirely upon her contractual obligation to pay $990 for the service contract." *Id.* at 947-48.

In the instant case, Plaintiff should be compelled to arbitrate his claims against Defendant because Plaintiff's claims against Defendant rely on the Account Agreement with Synchrony because, even though Plaintiff has not alleged a breach of the Account Agreement, his FDCPA claims make reference to and presume the existence of the debt owed to Synchrony which Defendant was attempting to collect. Moreover, Plaintiff's claims against Defendant depend entirely on Plaintiff's contractual obligation to pay the debt Defendant was attempting to collect for Synchrony. Nonsignatory estoppel prevents Plaintiff from repudiating the arbitration provision of the Account Agreement.

Having agreed to arbitrate and waive class actions related to all aspects of the credit relationship, there is no reasonable basis for Plaintiff to avoid his agreement to arbitrate and waive class actions simply because Synchrony assigned the task of debt collection to Defendant. Put

another way, if, as it certainly could, Synchrony were attempting to collect its own debt, Plaintiff would unquestionably be required to arbitrate and precluded from participating in a class action related to any debt collection efforts. Having so covenanted, Plaintiff cannot avoid his contractual agreement based solely upon the identity of Synchrony's debt collector.

Accordingly, this Court should find, under Utah law, that the arbitration provision and class action waiver in Plaintiff's Account Agreement can be enforced by Defendant under the doctrine of equitable estoppel.

CONCLUSION

For these reasons, Defendant respectfully requests this Court deny Plaintiff's motion for class certification.

Dated: January 4, 2018                    Respectfully submitted,

By: */s/ Jeff Kominsky*
JEFF KOMINSKY
FL Bar No. 69408
Jeff.Kominsky@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
110 SE 6th St., Ste. 2600
Fort Lauderdale, FL 33301
(954) 728-1280
(954) 728-1282 (Fax)

WILLIAM S. HELFAND
Admitted *pro hac vice*
Bill.Helfand@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
24 Greenway Plaza, Ste. 1400
Houston, TX 77046
(832) 460-4614
(713) 759-6830 (Fax)

Attorneys for Defendant,
GC Services Limited Partnership

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served electronically by the CM/ECF system on January 4, 2018, on all counsel or parties of record on the Service List below.

*/s/ Jeff Kominsky*
Jeff Kominsky

## <u>SERVICE LIST</u>

Leo W. Desmond
lwd@verobeachlegal.com
   Desmond Law Firm, P.C.
5070 Highway A1A, Ste. D
Vero Beach, FL  32963
Telephone: (772) 231-9600
Facsimile: (772) 231-0300
Attorneys for Plaintiff,
James Alderman

Scott D. Owens
scott@scottdowens.com
Scott D. Owens, P.A.
3800 S. Ocean Drive, Ste. 235
Hollywood, FL  33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666
Attorneys for Plaintiff,
James Alderman